```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

MAURICE W. SMITH,               :
                                :
     Plaintiff,                 :
                                :
v.                              :    Case No. 3:13-CV-00502 (RNC)
                                :
GREATER NEW HAVEN TRANSIT       :
DISTRICT,                       :
                                :
     Defendant.                 :
```

MEMORANDUM

Plaintiff Maurice W. Smith, proceeding pro se, brought this lawsuit against his former employer, the Greater New Haven Transit District ("District"), alleging that he was suspended in retaliation for filing a complaint of racial discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO").  No motion for summary judgment having been filed, the case proceeded to a jury trial without an assessment of the sufficiency of Mr. Smith's evidence by the Court.  After Mr. Smith completed his presentation of evidence, the defendant moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a).  After argument by both parties, the motion was granted from the bench.  This memorandum provides a more complete statement of the reasons for the ruling.

I. Background

The evidence presented by the parties during the trial, viewed fully and most favorably to Mr. Smith, shows the

1

following.  Mr. Smith began work for the District in September 2000.  He worked as a bus driver, primarily transporting elderly and handicapped passengers.

In June 2010, a supervisor reported seeing Mr. Smith talking on a cell phone while driving his District vehicle, a violation of District policy for which a driver may be suspended without pay.  Mr. Smith was suspended for three days, beginning July 1, 2010.  That September, Mr. Smith filed a complaint with the CHRO alleging that his suspension had been motivated by racial discrimination.  In a document dated April 13, 2011, the CHRO released its jurisdiction over the complaint, permitting Mr. Smith to bring suit.

In the meantime, Mr. Smith was again reported for using his cell phone while operating a District bus on duty.  On April 8, 2011 – five days before the CHRO issued its Release of Jurisdiction – a District employee named Taleim Salters told his supervisor that on April 7 he had seen Mr. Smith operating his District bus while holding a cell phone to his ear.  Mr. Smith has conceded that if the District credited the report of his cell phone use, he could lawfully be suspended.  The District, consistent with its usual practice, notified union steward Mary Barber of the alleged violation instead of confronting Mr. Smith directly.  At some point between April 8 and April 19, Ms. Barber informed Mr. Smith that the District was considering "pulling him

off the road" and he would have to meet with his supervisors concerning an incident that occurred on April 7.  At a meeting on April 19, Mr. Smith was informed of the allegation of cell phone use and told he would be suspended.  Starting May 5, 2011, Mr. Smith was suspended without pay for ten days.

Mr. Smith's suspensions in July 2010 and May 2011 are not the only incidents on record relating to his impermissible cell phone use.  On five occasions between 2007 and 2011, a District employee reported having observed Mr. Smith using a cell phone while operating his District vehicle.  Each time Mr. Smith was suspended. Ex. 28.  During the same period of time, seventeen District passengers or passing motorists complained that Mr. Smith had been using his phone while driving, but none of these reports prompted formal discipline.  <u>Id</u>.

This case arises out of Mr. Smith's May 2011 suspension.  In his complaint, Mr. Smith alleges that the District suspended him not because he was reported for using a cell phone, but because of his earlier CHRO complaint about racial discrimination.  He asserts that the District would not have disciplined him but for this protected activity, rendering his suspension unlawful under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

II. <u>Discussion</u>

Federal Rule of Civil Procedure 50(a)(1) provides:

3

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

A court ruling on a Rule 50(a) motion should "review all of the evidence in the record," drawing "all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000). It is not the court's function to make credibility determinations or weigh the evidence, but only to determine whether any reasonable juror could, in light of the whole record and the governing substantive law, return a verdict for the nonmovant. Id.

In this case, Title VII provides the substantive law. Title VII prohibits employers from retaliating against employees for engaging in protected conduct. Retaliation claims brought under Title VII are evaluated using the McDonnell Douglas burden shifting test. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff bears the initial burden of establishing 1) his participation in a protected activity; 2) the defendant's awareness of that activity; 3) an adverse employment action; and 4) a causal connection between the adverse action and the protected activity.

4

Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (per curiam).  If the plaintiff makes this showing, "a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason" for the adverse employment action.  Dall v. St. Catherine of Siena Med. Ctr., 966 F. Supp. 2d 167, 192 (E.D.N.Y. 2013).  If the employer carries that burden, the plaintiff must establish that the adverse employment action would not have occurred but for the protected activity.  Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. ___, ___, 133 S. Ct. 2517, 2534, 186 L.Ed.2d 503 (2013).

Here, assuming Mr. Smith has made a *prima facie* case, he has not met his ultimate burden of adducing evidence sufficient to permit the reasonable conclusion that his protected activity was the but-for cause of his suspension.  In other words, viewing the trial evidence fully and most favorably to Mr. Smith, no reasonable juror could find that were it not for his complaint to the CHRO, he would not have been suspended.

In attempting to establish a causal connection between his CHRO complaint and his suspension, Mr. Smith relies on the timing of events.  He points out that the CHRO issued its Release of Jurisdiction on April 13, 2011.[1]  Six days later, on April 19, he

---

[1] Mr. Smith has not suggested that the temporal relationship between the filing of the complaint and his suspension gives rise to an inference of retaliation, and at all events the seven

was informed he would be suspended, and his suspension took effect on May 5.

Whatever inference this sequence of events might raise standing alone, any concern about retaliation is dispelled when the events are viewed in context. Mr. Smith was reported for using a cell phone on April 8, 2011, five days before the CHRO issued its Release of Jurisdiction. The report was made by a District employee who claimed to have observed the event. As was its usual practice, the District notified Mr. Smith's union steward of the allegation, and she contacted Mr. Smith at some point between April 8 and April 19. Consistent with its response on the four previous occasions when a District employee had reported Mr. Smith for talking on his cell phone while driving, the District suspended Mr. Smith.

These facts are undisputed. At trial Mr. Smith offered no evidence to undermine their effect, which is to demonstrate not only that the District had a non-retaliatory reason for its action but that it would have suspended Mr. Smith whether he had filed a CHRO complaint or not. When in the past employees had approached the District to complain about Mr. Smith's cell phone

---

months separating the two incidents is too long to suggest a causal connection. See Chukwueze v. NYCERS, 891 F. Supp. 2d 443, 457 (S.D.N.Y. 2012) ("[T]he temporal proximity between [plaintiff's] testimony and the alleged adverse employment action – somewhere between three and six months – is insufficient, standing alone, to establish a causal connection.").

use, its invariable practice had been to suspend Mr. Smith.  In this case an employee reported Mr. Smith for cell phone use nearly a week before the CHRO released jurisdiction in his administrative matter.  Thus, by the time the Release of Jurisdiction issued, the District's disciplinary process, which had always culminated in suspension before, was already underway.  Nothing suggests that a suspension would not have been imposed in this instance were it not for the CHRO's action in issuing a release.  Absent some additional evidence on Mr. Smith's side of the ledger – for instance, comparator evidence tending to show that other drivers reported for cell phone use had not been suspended – this leads inevitably to the conclusion that Mr. Smith's protected activity was not the but-for cause of his suspension.  For that reason, it would be futile to submit the case to a jury, which could not consistent with the law return a verdict for Mr. Smith.

III. Conclusion

Accordingly, the defendant's Rule 50(a) motion for judgment as a matter of law has been granted.

Dated this 19th day of May, 2015.

                                           /s/
                                   Robert N. Chatigny
                             United States District Judge